IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN PEARL GROUP, LLC, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:22-CV-00693-N |
| NATIONAL PAYMENT SYSTEMS, LLC, *et al.*, | § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants National Payment Systems, LLC ("NPS") and BeckVentures, LLC's ("Beck") motion to dismiss [11]. Even assuming that NPS and Beck cannot enforce the choice-of-law clauses in their agreements with Plaintiff American Pearl Group, LLC ("Pearl"), the Court concludes that the contemplated transaction is not usurious as a matter of law. Consequently, the Court grants NPS and Beck's motion to dismiss because Plaintiffs have failed to state a claim upon which relief may be granted.

### I. PEARL'S SUBCONTRACTING RELATIONSHIP WITH NPS AND RELATED DEBT FINANCING AGREEMENTS

The parties to this dispute operate in the credit card payment processing industry. Whenever a consumer uses a credit card to pay a merchant for his or her purchase, information must flow between the issuing bank who extends credit to the cardholder and the acquiring bank who maintains the merchant's account. Intermediaries profit by facilitating these transactions and retaining a portion of the money remitted. Independent

ORDER – PAGE 1

Sales Organizations ("ISOs") are a subtype of intermediary contracted by acquiring banks to sign up new merchants and service their accounts. In some instances, ISOs partner with sub-ISOs, which focus primarily on sales and onboarding new accounts while the ISO provides back-office services and customer support. An ISO or sub-ISO that adds a merchant account will continue to be paid a portion of the future transaction fees generated by that merchant's transactions for as long as the merchant continues to process transactions with them. These payments are called residuals.

NPS is an ISO. Pearl and NPS entered an arrangement where Pearl would function nonexclusively as a sub-ISO to NPS. Pls.' Compl. ¶ 29 [1]. Pearl encountered financial difficulties in paying NPS's invoices for equipment leases — it claims as part of a concerted scheme by NPS to induce distress — and ultimately agreed to accept debt financing to stave off insolvency. *Id.* ¶¶ 31–39, 25–26, 42, 62. Pearl first borrowed $375,100.85 from NPS to be repaid with interest over 42 months, totaling $684,966.76 (the "NPS loan"). *See* Pls.' Compl., Ex. B, NPS Loan Agreement Ex. B 42–43 [1-1]. Later, Pearl accepted a loan of $137,852.93 from Beck, another ISO and alleged affiliate of NPS, to be repaid with interest over 36 months, totaling $225,577.51 (the "Beck loan"). *See id.* Ex. E, Beck Loan Agreement Ex. B 104–05. Payment schedules attached to the loans denoted each payment's allocations toward principal and interest, but neither agreement articulated an exact interest rate. The loans were secured by Pearl's residuals portfolio and incorporated agreements granting NPS and Beck options to acquire future residual payment rights for a portion of the merchants in Pearl's portfolio. Pls.' Compl. ¶¶ 43, 63. The

ORDER – PAGE 2

options locked in specific purchase prices and were to become exercisable upon the loans'

full repayment or in the event of default.  *Id.*

Plaintiffs Pearl and loan guarantors John Sarkissian and Andrei Wirth sued NPS,

Beck, and Does 1-20, seeking a declaration that the loans violate Texas's usury statutes

and that Plaintiffs are accordingly entitled to punitive damages.  NPS and Beck have moved

to dismiss for failure to state a claim upon which relief can be granted.

## II.  THE LEGAL STANDARD FOR A RULE 12(B)(6) MOTION

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim

for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  "When

reviewing a motion to dismiss, a district court must consider the complaint in its entirety,

as well as . . . documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir.

2011) (internal quotation marks omitted).  A district court may consider a contract that is

attached to the complaint.  *See Inclusive Cmtys Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d

890, 900 (5th Cir. 2019).

A viable complaint includes "enough facts to state a claim to relief that is plausible

on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this

standard, a plaintiff must "plead[ ] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and

construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton,*

*Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  *Id.* (internal citations omitted).

### III.  CHOICE OF LAW

Defendants first argue that Plaintiffs' claims should be dismissed because the agreements contained clauses selecting Oregon as the choice of law, and Plaintiffs have asserted only Texas law claims.  Federal courts apply the choice-of-law rules of the states where they sit, *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), and Texas courts ordinarily enforce valid choice-of-law provisions.  *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990).  However, under Texas law, such a provision is not enforceable when the chosen state lacks a reasonable relationship to the substance of the agreements.  *Woods-Tucker Leasing Corp. of Georgia v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 749–50 (5th Cir. 1981).

Here, the parties dispute Defendants' ties to Oregon, and resolution of such factual disagreements is premature on a Rule 12(b)(6) motion.  *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (noting that judicial factfinding is appropriate in the Rule 12(b)(1) context when choice of law implicates a court's subject matter jurisdiction, and accordingly that when "the defendant's motion to dismiss raises factual issues, the plaintiff should have an opportunity to develop and argue the facts"); *see also, e.g.*, *MC Asset Recovery, LLC v. Commerzbank AG*, 441 B.R. 791, 800 (N.D. Tex. 2010), *vacated and remanded sub nom.*

*In re Mirant Corp.*, 675 F.3d 530 (5th Cir. 2012) (addressing choice of law in the posture of summary judgment).  The Court would grant the motion upon a determination that Oregon law indeed applied.  But because the motion should be granted even assuming that Texas law applies, explained *infra*, the Court declines to address the provisions' enforceability at this time.

## IV.   THE COMPLAINT FAILS TO ALLEGE LEGALLY COGNIZABLE AND USURIOUS INTEREST

To survive a motion to dismiss, Plaintiffs must plead that the parties contracted for some value satisfying the legal definition of usurious interest.  Defendants argue that the loan payment schedules are not usurious and that the residual purchase options are not legally cognizable interest.  Given that the terms of both loan agreements are substantially similar, the Court will discuss the claims against NPS and Beck together.

### A.  The Applicable Standard for Usury Under Texas Law

A usurious transaction has three elements: (1) a loan of money; (2) an absolute obligation for the borrower to repay the principal; and (3) an exaction of greater interest than allowed by law.  *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994) (citing *Holley v. Watts*, 629 S.W.2d 694, 969 (Tex. 1982)).  The usury statutes set out in the Texas Finance Code establish that the maximum allowable interest rate for a commercial transaction such as this is 28% annually.  TEX. FIN. CODE § 303.009(c).

Interest is any "compensation for the use, forbearance, or detention of money," barring exceptions not relevant here.  *Id.* § 301.002(a)(4).  However, a charge will not be considered interest if it is "supported by a distinctly separate and additional consideration,

other than the simple lending of money." *Tony's Tortilla Factory, Inc.*, 877 S.W.2d at 287.

Nor is a payment interest if the value to be received by the lender is uncertain. *See First

USA Mgmt., Inc., v. Esmond*, 960 S.W.2d 625, 628 (Tex. 1997); *Beavers v. Taylor*, 434

S.W.2d 230, 231 (Tex. Civ. App. — Waco 1968, writ ref'd n.r.e.). Nevertheless, a

contingency may still be interest so long as the contract expressly and automatically entitles

the lender to a certain amount upon its occurrence.[1] *Najarro v. SASI Intern., Ltd.*, 904 F.2d

1002, 1010 (5th Cir. 1990) (quoting *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341

(Tex. 1980)); *cf. Beavers*, 434 S.W.2d at 232 (finding that contingent payments dependent

on the debtor's gross sales were too uncertain to be interest). The certainty principle

effectuates the purpose of the usury statutes, which are strictly penal in nature and target

only those who intentionally charge excessive interest. *Guetersloh v. C.I.T. Corp.*, 451

S.W.2d 759, 761 (Tex. Civ. App. — Amarillo 1970, writ ref'd n.r.e.). Requiring certainty

of interest guards against usury law inadvertently punishing mere business investments,

---

[1] Plaintiffs dispute this rule, arguing that *Najarro* overruled *Beavers*. Pls.' Br. Opp. Mot. Dismiss 20 [15]. But Defendants are correct to harmonize the two. Defs.' Br. Mot. Dismiss 13 [20]. *Beavers* and similar cases were distinguishable in *Najarro* because they actually turned on the separate requirements of certain interest and absolute repayment obligation, using "contingency" in entirely different contexts. *Pansy Oil Co.*, 91 S.W.2d 453, 457 (Tex. Civ. App. — Texarkana 1936, writ ref'd) ("At best, *the repayment of any amount* under said contract or the arrangements as alleged in the petition rested on the contingency.") (emphasis added); *Beavers*, 434 S.W.3d at 232 (Payment of interest "was contingent upon there being gross sales, and the *amount thereof* was *highly uncertain*.") (emphasis added); *Wagner*, 525 S.W.2d at 731 (affirming a finding of no usury when "it was 'impossible to assign a true dollar value' to" the alleged interest). Nothing in *Beavers* necessarily conflicts with the ultimate holding in *Najarro*: a usury claim exists when there is no doubt that interest would exceed the legal maximum in the event that it is indeed paid. 904 F.2d at 1010. Regardless, Texas courts continue to cite *Beavers* favorably. *First USA Mgmt., Inc.*, 960 S.W.2d at 628.

which facilitate socially desirable economic development and would be disincentivized if the possibility of substantial returns rendered investors subject to penalties. *See Anglo-Dutch Petr. Int'l., Inc., v. Haskell*, 193 S.W.3d 87, 96 (Tex. App. — Houston [1st Dist.] 2006, pet. denied) (collecting cases).

Whether a contract is usurious is determined as of its inception. *Southwestern Inv. Co. v. Hockley Cnty. Seed & Delinting, Inc.*, 511 S.W.2d 724, 731 (Tex. Civ. App. — Amarillo 1974), *rev'd on other grounds*, 516 S.W.2d 136 (Tex. 1974). If no legally valid interest existed at formation — meaning one that was sufficiently certain — "there can be no basis for usury." *Tony's Tortilla Factory, Inc.*, 877 S.W.2d at 287 (collecting cases). Accordingly, courts look to whether, at the time of the agreement, it was possible to ascertain the true dollar value to be received by the lender. *See, e.g.*, *Wagner v. Austin Sav. & Loan Ass'n*, 525 S.W.2d 724, 731 (Tex. Civ. App. — Beaumont 1975, no writ).

Because usury statutes are construed strictly, courts initially presume that a transaction is lawful unless usurious on its face. *Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc.*, 832 F. Supp. 192, 196 (S.D. Tex. 1993) (citing *Tex. Comm. Bank-Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex. 1984); *Smart*, 597 S.W.2d at 340–41). Facial usury exists where a contract makes "an express reservation of more than legal interest," and the intent to do so is apparent. *Luong v. Tran*, 1995 WL 613062, at *3 (Tex. App. — Houston [14th Dist.] 1995, pet. denied) (quoting *Moser v. John F. Buckner & Sons*, 292 S.W.2d 668, 672 (Tex. Civ. App. — Waco 1956, writ ref'd n.r.e.)). A party asserting that an instrument is not facially usurious, but nevertheless is a device to conceal usury, bears the additional burden of alleging "a 'corrupt agreement or scheme to cover usury and that such

agreement or scheme was in full contemplation of the parties.'" *Najarro*, 904 F.2d at 1008 (quoting *Moss v. Met. Nat'l Bank*, 533 S.W.2d 397, 399 (Tex. Civ. App. — Houston [1st Dist.] 1976, no writ)).

### B. The Loan Payment Schedules Do Not Exact Usurious Interest on Their Faces

The transactions at issue involve two potential sources of interest: the loan payment schedules and the option agreements. The Court first addresses the loan payment schedules. The parties offer competing calculations of the loans' interest rates, but the proper methodology is prescribed by statute.

Under Texas law, courts test commercial contracts for usury by applying the spreading doctrine. TEX. FIN. CODE § 306.004(a) (codifying *Nevels v. Harris*, 102 S.W.2d 1046, 1049 (Tex. 1937)). "[U]sury penalties cannot be imposed merely because a loan's interest rate exceeds the statutory limit in any particular year." *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 717 (Tex. App. — Corpus Christi-Edinburg 1998, pet. denied) (citing Tanner Dev. Co. v. Ferguson, 561 S.W.2d 777, 782 (Tex. 1977)). Instead, Texas courts spread the total contracted interest across the life of the loan and assess it against the total maximum interest that would be allowed. *Id.* at 714 (citing *Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 786–87 (Tex. 1977)). The maximum legal interest is the amount of the loan proceeds multiplied by the allowable rate of interest per year — here, 28% — and multiplied again by the term for repayment. *Pentico*, 964 S.W.2d at 717.

The NPS loan proceeds were $375,100.85 to be repaid with $309,865.91 in interest over 42 months, or 3.5 years. Multiplying the proceeds and term by 28% yields $367,598.83 as the maximum total amount of interest allowed. The interest contracted for

ORDER – PAGE 8

in the NPS loan agreement does not exceed the statutory ceiling, and thus it does not independently support a usury claim against NPS.

The Beck loan proceeds were $137,852.93 to be repaid with $87,724.58 in interest over 36 months.  Multiplying the proceeds and term by 28% yields $115,796.46 as the maximum total amount of interest allowed. The interest contracted for in the Beck loan agreement also does not exceed the statutory ceiling, so it also does not independently support a claim against Beck.

### C. The Option Agreements Lack Certain Value and Cannot Be Interest

Because the loan's explicit payment terms are not independently usurious, the Court turns to whether the option agreements incorporated by each loan are interest that can support a usury claim.

Interest need not be a payment of currency; it may take the form of any compensation, but it still must have a certain dollar value at contract formation.  *Supra* Part IV-A; *see also* David R. Dow & Craig Smyser, 49 TEX. PRAC., CONTRACT LAW § 3.17. Usury — Interest defined.  The difficulty therein, though, is that payments in the form of goods, services, or intangibles may not lend themselves easily to a calculation of whether their value exceeds the maximum interest allowed by statute.  The certainty principle ensures that usury penalties will be strictly construed, applied to only those whose violations of the law can be readily determined.  *See supra* Part IV-A.

For example, in *Beavers v. Taylor*, a Texas court held that an agreement compensating a lender by entitling her to receive percentage-based commissions of the business's future sales was not usurious because the payment amounts were too uncertain.

ORDER – PAGE 9

434 S.W.2d at 231.  Though the substance of the transaction in *Beavers* was a loan, the defendant effectively made a business investment by making her compensation for the loan dependent upon the business's future performance.  At the time the loan was made, there was no guarantee that the defendant would recover any interest, let alone so much that it exceeded the statutory maximum rate.  Such uncertain, risk-based transactions are beyond the scope of the usury statutes.  Without a concrete determination that the interest exchanged was usurious, the *Beavers* court lacked a basis to penalize the defendant.

The instant case also involves assets of uncertain future value as potential interest,[2] though here Defendants hold purchase options rather than rights to automatic conveyance. The loan agreements incorporated the option agreements, which granted Defendants the rights to purchase a portion of Pearl's residuals at a later date for a specified price.  NPS Loan Agreement § 8.2 (p. 38); Beck Loan Agreement § 8.2 (p. 99).  The NPS Loan states explicitly that the NPS Option Agreement was made "in further consideration for the Loan."  NPS Loan Agreement § 2.11 (p. 30).  By incorporating those agreements into the

---

[2] Characterizing the potential interest at issue as the residuals to be purchased versus the options to purchase them is a distinction without a difference.  The intrinsic value of an option rises and falls with the value of the underlying asset.  *See* Harold S. Bloomenthal & Samuel Wolff, 3 Sec. & Fed. Corp. Law, § 2:91 (2d ed. 2022).  Because the residuals' value was uncertain at the time of the parties' agreements for the reasons explained *infra*, the intrinsic values of the options to purchase them are also inherently uncertain at formation and until exercise or expiration.

ORDER – PAGE 10

Loan Documents,[3] the parties characterized the options to acquire Pearl's residuals as compensation for the loans.[4]

And as in *Beavers*, "it is impossible" for this Court to ascertain the "true dollar value" to be received by the Defendants as of the time of contract formation. *Wagner*, 525 S.W.2d at 731. First, the assets that may be acquired are unclear; the specific portions of Pearl's portfolio to be acquired by the Defendants were not yet determined at the execution of the Loan Documents. Instead, that designation was deferred until the time of exercise, to be made according to parameters set out in the option agreements. NPS Loan Agreement Ex. E, NPS Option Agreement § 1.4 (p. 57); Beck Loan Agreement Ex. E, Beck Option Agreement § 1.3 (p. 109). One parameter was that the selected residuals were to exceed a minimum amount of monthly revenue. Streams of residual income are dynamic by nature, and it is possible that, depending on attrition within Pearl's portfolio, Pearl would not have even been able to provide residuals satisfying that requirement. Further, the possibility of attrition makes Pearl's contentions regarding the value of the residuals at the time of the agreement unhelpful in forward-looking determinations of what their value would be at exercise. Plaintiffs have not explained how the residuals' value at exercise could be predicted at contract formation without doubt and that such amount, minus the purchase

---

[3] Defined by the parties as the loan agreement, option agreement, guaranty, "and any other documents and agreements relating to the transactions consummated" for each loan respectively. NPS Loan § 1.1 (p. 26); Beck Loan § 1.1 (p. 88).

[4] The Court reserves the question of whether the option agreements were supported by separate and additional consideration, as that is a factual determination to be made by a jury. *Tony's Tortilla Factory, Inc.*, 877 S.W.2d at 287. Whether due to separate consideration or lack of certain value, *infra*, the option agreements are not interest in either case.

ORDER – PAGE 11

price, would certainly be usurious. From the contentions within the complaint and the Loan Documents themselves, the Court cannot say with certainty what value Defendants were to receive from the option agreements. Accordingly, they do not satisfy the legal definition of interest and cannot support a claim of usury on the face of the agreements.

### D.  Plaintiffs Have Not Adequately Pleaded Concealed Usury

Even if Plaintiff adequately pleaded the standard elements of usury, to the extent they argue that Defendants employed the option agreements as devices to conceal usury, they must also allege facts establishing the existence of a corrupt scheme to evade the law. Plaintiffs allege that NPS and Becks' business dealings with Pearl were a predatory scheme to take over its book of business. Pls.' Compl. ¶¶ 25–26. Further, they allege that "the market value of residuals is a multiple of forty (40) times the monthly residual," a valuation much higher than the contracted-for purchase price. *Id.* ¶ 44. But to state a plausible concealed usury claim, Plaintiffs must do more than allege strategic or even nefarious business tactics. "An unlawful intent will not be imputed where a lawful one may just as consistently be imputed." *Fed. Mortg. Co. v. Davis*, 100 S.W.2d 717, 721 (Tex. Civ. App. — Dallas 1936), *aff'd* 111 S.W. 2d 1066 (Tex. 1938). Plaintiffs' allegations must support an inference that Defendants acted deliberately and evasively with respect to the allegedly usurious agreement in particular.

Plaintiffs have not contended that Defendants knew of the alleged valuation and schemed to underpay. At most, Plaintiffs say that "such is an industry accepted standard that was in effect for years . . . at the time of the NPS Loan." *Id.* This alone does not suggest "more than a sheer possibility" that Defendants knew of this metric and

intentionally structured their agreements with Pearl to conceal a known or suspected usury violation within a complex contractual structure. *Twombly*, 550 U.S. at 555.

Because the complaint does not provide a factual basis for a plausible inference of an evasive scheme predicated upon the option agreements within the contemplation of the parties, Plaintiffs' allegations are insufficient under Rule 12's pleading requirements to state a plausible concealed usury claim.

## CONCLUSION

Even assuming *in arguendo* that the choice-of-law provisions are not enforceable, Plaintiffs have not alleged interest that can support a usury claim under Texas law. Plaintiffs also have not alleged facts sufficient for the Court to infer that the option agreements were deliberately used to conceal usury. Accordingly, the Court grants the motion to dismiss and grants Plaintiffs leave to amend. Provided that they can do so in a manner consistent with this opinion, Plaintiffs may file an Amended Complaint within thirty (30) days of the date of this Order. If Plaintiffs do not amend, the Court will dismiss the case with prejudice without further notice.


Signed December 20, 2022.


David C. Godbey
United States Chief District Judge


ORDER – PAGE 13