IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN PEARL GROUP, LLC, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:22-CV-00693-N |
| NATIONAL PAYMENT SYSTEMS, LLC, *et al.*, | § § § § | |
| Defendants. | § § § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff American Pearl Group, LLC's ("Pearl") motion for reconsideration [24] and Defendant National Payment Systems, LLC's ("NPS") motion to dismiss [28]. The Court denies Pearl's motion for reconsideration and grants NPS's motion to dismiss.

## I. ORIGINS OF THE DISPUTE

The parties' relationship has been explained in detail previously, *see* Mem. Op. & Order 1–3 [23], and is summarized here. NPS and Pearl operate in the credit card payment processing industry. Whenever a consumer uses a credit card to pay a merchant for his or her purchase, information must flow between the issuing bank which extends credit to the cardholder and the acquiring bank which maintains the merchant's account. NPS and Pearl are intermediaries that profit by facilitating transactions and retaining a portion of the money remitted. NPS is an Independent Sales Organization ("ISO"), which is a subtype

of intermediary contracted by acquiring banks to sign up new merchants and service their accounts, and NPS subcontracted work to Pearl.

As part of the transaction, NPS leased equipment to Pearl. Pearl encountered financial difficulties paying NPS's invoices, which Pearl alleges was part of a concerted scheme by NPS to induce distress and obtain some of Pearl's streams of residual income. To avoid insolvency, Pearl accepted loans from NPS (the "Loan") and its alleged affiliate BeckVentures, LLC ("Beck"), both of which were secured by Pearl's residuals portfolio and incorporated agreements granting NPS and Beck options to acquire future residual payment rights for a portion of the merchants in Pearl's portfolio. The options locked in specific purchase prices and were not exercisable until the loans' full repayment or in the event of default.

Plaintiffs initially sued NPS, Beck, and Does 1–20, seeking a declaration that the loans violate Texas's usury statutes and corresponding punitive damages. NPS and Beck moved to dismiss, and the Court concluded that (1) per Texas law's spreading doctrine, the loan schedule did not reflect usurious interest, (2) the values of the purchase options were too uncertain to constitute interest, and (3) Plaintiffs had not adequately alleged a scheme to conceal usury. Mem. Op. & Order 8–9, 12–13. Accordingly, the Court dismissed Plaintiffs' complaint for failure to state a claim, but granted leave to amend. *Id.* at 13. Plaintiffs have amended their complaint as well as moved for reconsideration of the Court's prior decision.

## II. THE APPLICABLE STANDARD FOR USURY

Under Texas law,[1] a usurious transaction has three elements: (1) a loan of money; (2) an absolute obligation for the borrower to repay the principal; and (3) an exaction of greater interest than permitted. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994) (citing *Holley v. Watts*, 629 S.W.2d 694, 969 (Tex. 1982)). The usury statutes set out in the Texas Finance Code establish that the maximum allowable interest rate for a commercial transaction such as this is 28% annually. TEX. FIN. CODE § 303.009(c).

Interest is any "compensation for the use, forbearance, or detention of money," barring exceptions not relevant here. *Id.* § 301.002(a)(4). However, a charge will not be considered interest if it is "supported by a distinctly separate and additional consideration, other than the simple lending of money." *Tony's Tortilla Factory, Inc.*, 877 S.W.2d at 287. Nor is a payment interest if the value to be received by the lender is uncertain. *See First USA Mgmt., Inc., v. Esmond*, 960 S.W.2d 625, 628 (Tex. 1997); *Beavers v. Taylor*, 434 S.W.2d 230, 231 (Tex. Civ. App. — Waco 1968, writ ref'd n.r.e.). Nevertheless, a contingency may still be interest so long as the contract expressly and automatically entitles the lender to a certain amount upon its occurrence.[2] *Najarro v. SASI Int'l, Ltd.*, 904 F.2d

---

[1] The parties disagree on choice-of-law in this case. But because the movants for reconsideration are Plaintiffs, who favor Texas law, and NPS's motion to dismiss should be granted even under Texas law, explained *infra*, the Court assumes without deciding that Texas law applies. *See also* Mem. Op. & Order 4–5.

[2] Plaintiffs dispute this rule, arguing that *Najarro* contradicts *Beavers*. Pls.' Br. Opp. Mot. Dismiss 28–29 [34]. But Defendants are correct to harmonize the two. Defs.' Br. Mot. Dismiss 17–18 [29]. *Beavers* and similar cases were distinguishable in *Najarro* because they actually turned on the separate requirements of certain interest and absolute repayment

MEMORANDUM OPINION & ORDER – PAGE 3

1002, 1010 (5th Cir. 1990) (quoting *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 341 (Tex. 1980)); *cf. Beavers*, 434 S.W.2d at 232 (finding that contingent payments dependent on the debtor's gross sales were too uncertain to be interest). The certainty principle effectuates the purpose of the usury statutes, which are strictly penal in nature and target only those who intentionally charge excessive interest. *Guetersloh v. C.I.T. Corp.*, 451 S.W.2d 759, 761 (Tex. Civ. App. — Amarillo 1970, writ ref'd n.r.e.). Requiring certainty of interest guards against usury law inadvertently punishing mere business investments, which facilitate socially desirable economic development and would be discouraged if the possibility of substantial returns rendered investors subject to penalties. *See Anglo-Dutch Petr. Int'l., Inc., v. Haskell*, 193 S.W.3d 87, 96 (Tex. App. — Houston [1st Dist.] 2006, pet. denied) (collecting cases).

Whether a contract is usurious is determined as of its inception. *Southwestern Inv. Co. v. Hockley Cnty. Seed & Delinting, Inc.*, 511 S.W.2d 724, 731 (Tex. Civ. App. — Amarillo 1974), *rev'd on other grounds*, 516 S.W.2d 136 (Tex. 1974). If no legally valid interest existed at formation — meaning one that was sufficiently certain — "there can be

---

obligation, using "contingency" in entirely different contexts. *Pansy Oil Co. v. Fed. Oil Co.*, 91 S.W.2d 453, 457 (Tex. Civ. App. — Texarkana 1936, writ ref'd) ("At best, *the repayment of any amount* under said contract or the arrangements as alleged in the petition rested on the contingency.") (emphasis added); *Beavers*, 434 S.W.3d at 232 (Payment of interest "was contingent upon there being gross sales, and the *amount thereof* was *highly uncertain*.") (emphasis added); *Wagner v. Austin Sav. & Loan Ass'n*, 525 S.W.2d 724, 731 (Tex. Civ. App. — Beaumont 1975, no writ) (affirming a finding of no usury when "it was 'impossible to assign a true dollar value' to" the alleged interest). Nothing in *Beavers* necessarily conflicts with the ultimate holding in *Najarro*: a usury claim exists when there is no doubt that interest would exceed the legal maximum in the event that it is indeed paid. 904 F.2d at 1010. Regardless, Texas courts continue to cite *Beavers* favorably. *See, e.g.*, *First USA Mgmt., Inc.*, 960 S.W.2d at 628.

no basis for usury." *Tony's Tortilla Factory, Inc.*, 877 S.W.2d at 287 (collecting cases). Accordingly, courts look to whether, at the time of the agreement, it was possible to ascertain the true dollar value to be received by the lender. *See, e.g.*, *Wagner*, 525 S.W.2d at 731.

Because usury statutes are construed strictly, courts initially presume that a transaction is lawful unless usurious on its face. *Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc.*, 832 F. Supp. 192, 196 (S.D. Tex. 1993) (citing *Tex. Comm. Bank-Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex. 1984); *Smart*, 597 S.W.2d at 340–41). Facial usury exists where a contract makes "an express reservation of more than legal interest," and the intent to do so is apparent. *Luong v. Tran*, 1995 WL 613062, at *3 (Tex. App. — Houston [14th Dist.] 1995, pet. denied) (quoting *Moser v. John F. Buckner & Sons*, 292 S.W.2d 668, 672 (Tex. Civ. App. — Waco 1956, writ ref'd n.r.e.)). A party asserting that an instrument is not facially usurious, but nevertheless is a device to conceal usury, bears the additional burden of alleging "a 'corrupt agreement or scheme to cover usury and that such agreement or scheme was in full contemplation of the parties.'" *Najarro*, 904 F.2d at 1008 (quoting *Moss v. Met. Nat'l Bank*, 533 S.W.2d 397, 399 (Tex. Civ. App. — Houston [1st Dist.] 1976, no writ)).

### III. THE COURT DENIES THE MOTION FOR RECONSIDERATION

#### A. Legal Standard

A request that the Court reconsider an interlocutory order is governed by Rule 54(b) of the Federal Rules of Civil Procedure, which allows "the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Tex., L.P.*,

864 F.3d 326, 336 (5th Cir. 2017). The standard for Rule 54(b) is more lenient than those of Rules 59(e) and 60(b), which govern reconsideration of final judgments. *See Ryan v. Phillips 66*, 838 F. App'x 832, 836 (5th Cir. 2020) (citing *McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018)). Under Rule 54(b), the Court may "reconsider and reverse its decision for any reason it deems sufficient." *Austin*, 864 F.3d at 336 (internal quotations and citations omitted).

But "[t]he mere fact that Rule 54(b) provides for a more flexible approach . . . does not mean that such motions should automatically be granted." *Halprin v. FDIC*, 2017 WL 9808438, at *2 (W.D. Tex. 2017). A district court's broad discretion under Rule 54(b) "must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Puga v. About Tyme Transp., Inc.*, 2017 WL 6049244, at *1 (S.D. Tex. 2017). Thus, even though the Rule 54(b) standard is "less exacting than that imposed by Rules 59 and 60 . . . considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Rotella v. Mid-Continent Cas. Co.*, 2010 WL 1330449, at *5 (N.D. Tex. 2010) (internal quotations omitted). The Fifth Circuit has instructed district courts evaluating Rule 54(b) motions to "avoid[] any dismissal based on a technicality" and "weigh the interests of justice." *Austin*, 864 F.3d at 337–38.

### B. Plaintiffs Have Not Presented a Sufficient Reason for Reconsideration

Plaintiffs' motion disputes the Court's interpretation of an aspect of Texas usury law known as spreading doctrine. The rule originated in *Nevels v. Harris*, when the Texas Supreme Court evaluated a loan for usury by assessing the total interest against the maximum interest that could legally have been charged during the loan's term. 102 S.W.2d

1046, 1049 (Tex. 1937). The rule has since been enacted into law, with the additional instruction to use the "actuarial method." Act of June 20, 1997, 75th Leg., R.S., ch. 1396, 1997 Tex. Gen. Laws 5202, 5217, *amended and recodified by* Act of May 10, 1999, 76th Leg., R.S., ch. 62, 1999 Tex. Gen. Laws 127, 236 (current version at TEX. FIN. CODE § 306.004(a) ("To determine whether a commercial loan is usurious, the interest rate is computed by amortizing or spreading, using the actuarial method during the stated term of the loan, all interest at any time contracted for, charged, or received in connection with the loan.")). Plaintiffs contend that the statute's specification of the "actuarial method" requires more complex calculations than the *Nevels* approach and would result in a finding of usury here. *See* TEX. ADMIN. CODE § 12.33(a)(1) (defining the actuarial method as "allocating payments made on a debt between the amount financed and the finance charge pursuant to which a payment is applied first to the accumulated finance charge and any remainder is subtracted from, or any deficiency added to, the unpaid balance of the amount financed").

"Federal courts applying state law must follow 'the final decisions of that state's highest court.'" *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020) (quoting *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013)). If the state's highest court has not decided an issue, the Court must guess how the state supreme court would decide the issue, and in doing so, the court must "defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Six Dimensions*, 969 F.3d at 227 (quoting *Temple*, 720 F.3d at 307).

MEMORANDUM OPINION & ORDER – PAGE 7

The Court is not aware of any Texas Supreme Court decision interpreting spreading doctrine since the state legislature prescribed the actuarial method, and Plaintiffs have not provided "persuasive data" to suggest that it would rule in their favor.  First, the section of the Administrative Code Plaintiffs cite does not relate to the transaction at issue here.  *See* TEX. ADMIN. CODE § 12.33(b)(3) ("This section applies to debt cancellation contracts and debt suspension agreements entered into by state banks in connection with an extension of credit they make.").  Further, Plaintiffs have not pointed to any cases, before or after the statute's enactment, applying the spreading doctrine in the manner they describe.  Indeed, Texas appellate courts have continued to follow *Nevels* and its progeny.  *See, e.g.*, *Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37, 47 (Tex. App. — Ft. Worth 2001, pet. denied); *C & K Invs. v. Fiesta Grp., Inc.*, 248 S.W.3d 234, 248 (Tex. App. — Houston [1st Dist.] 2007, no pet.) (citing *Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 714 (Tex. App. — Corpus Christi–Edinburg 1998, pet. denied)); *Kennon v. McGraw*, 281 S.W.3d 648, 651 (Tex. App. — Eastland 2009, no pet.); *Torres v. Overby*, 2000 WL 382417, at *2 (Tex. App. — Dallas 2000, no pet.) (citing *Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 786–87 (Tex. 1977)).

This Court may not freely depart from state precedent to adopt Plaintiffs' alternative statutory interpretation, and Plaintiffs' citation to the Texas Practice Guide's volume on Financial Transactions, standing alone, is not adequate evidence that the Texas Supreme Court would deviate from the longstanding approach to spreading doctrine.  *See* TEX. PRAC. GUIDE FIN. TRANS. § 2.49 (defining the actuarial method in the context of consumer

loans). Accordingly, the Court lacks a sufficient reason to reverse and reconsider its earlier approach.

## IV. THE COURT GRANTS THE MOTION TO DISMISS

### A. *The Legal Standard for a Rule 12(b)(6) Motion*

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A district court may consider a contract that is attached to the complaint. *See Inclusive Cmtys Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

A viable complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough

to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).

### B. Plaintiffs Have Not Stated a Plausible Usury Claim

Plaintiffs allege two types of interest supporting their usury claim — the Loan's scheduled interest and the incorporated purchase option agreement — as well as that NPS intentionally disguised that it was contracting for excessive interest. The original petition lacked sufficient factual support on all three theories. Mem. Op. & Order 13. The Court granted leave to amend, but the Amended Complaint [25] suffers from the same deficiencies.

***1. The Scheduled Interest Is Not Usurious.*** – Plaintiffs first argue that the interest explicitly set out in the Loan exceeds the lawful maximum. The Court previously held:

> Under Texas law, courts test commercial contracts for usury by applying the spreading doctrine. . . . The maximum legal interest is the amount of the loan proceeds multiplied by the allowable rate of interest per year — here, 28% — and multiplied again by the term for repayment.
>
> The NPS loan proceeds were $375,100.85 to be repaid with $309,865.91 in interest over 42 months, or 3.5 years. Multiplying the proceeds and term by 28% yields $367,598.83 as the maximum total amount of interest allowed. The interest contracted for in the NPS loan agreement does not exceed the statutory ceiling, and thus it does not independently support a usury claim against NPS.

Mem. Op. & Order 8–9 (internal citations omitted). For the reasons explained *supra* Part III.B, the Court stands by its prior analysis, and the Amended Complaint does not allege any additional explicit interest. Accordingly, the Loan's repayment schedule cannot independently support Plaintiffs' usury claim.

### *2. The Option Agreements Lack Certain Value and Cannot Be Interest.* – Second,

Plaintiffs argue that the option agreement was additional, usurious interest on the Loan. The Court previously held:

> Interest . . . may take the form of any compensation, but it still must have a certain dollar value at contract formation. . . . [I]t is impossible for this Court to ascertain the true dollar value to be received by the Defendants . . . . First, the assets that may be acquired are unclear; the specific portions of Pearl's portfolio to be acquired by the Defendants were not yet determined at the execution of the Loan Documents. Instead, that designation was deferred until the time of exercise, to be made according to parameters set out in the option agreements. . . .
>
> Streams of residual income are dynamic by nature, and it is possible that, depending on attrition within Pearl's portfolio, Pearl would not have even been able to provide residuals satisfying that requirement. . . . Plaintiffs have not explained how the residuals' value at exercise could be predicted at contract formation without doubt and that such amount, minus the purchase price, would certainly be usurious. . . .
>
> [T]he Court cannot say with certainty what value Defendants were to receive from the option agreements. Accordingly, they do not satisfy the legal definition of interest and cannot support a claim of usury on the face of the agreements.

Mem. Op. & Order 9–12 (internal citations omitted).

Plaintiffs' Amended Complaint contends that because Pearl could have immediately defaulted on the Loan, and the residuals portfolio could be determined at that time, a hypothetical scenario existed under which NPS would have been entitled to usurious interest. Am. Compl. ¶ 72. But contingent interest is "certain" only if its amount would be predictable no matter when the contingency occurs. *See Najarro*, 904 F.2d at 1010 ("Therefore . . . the transaction is still usurious, since *whenever defendants would make their expected profit*, they would be obliged to pay interest at a 25% rate.") (emphasis

MEMORANDUM OPINION & ORDER – PAGE 11

added). Plaintiffs' new allegations still have not established with certainty what their residuals portfolio would have been, and accordingly the value of the option to purchase them,[3] at all points in time between contract formation and repayment in full as scheduled 42 months later. Accordingly, the option agreement's value remains too speculative to support a claim that the transaction was usurious on its face.

**3. Plaintiffs Have Not Adequately Pleaded Concealed Usury.** – Finally, Plaintiffs argue that NPS "intentionally structured its agreements with Pearl to conceal a known or suspected usury violation within a complex contractual structure." Am. Compl. ¶ 78. The Court previously held:

> [T]o state a plausible concealed usury claim, Plaintiffs must do more than allege strategic or even nefarious business tactics. 'An unlawful intent will not be imputed where a lawful one may just as consistently be imputed.' Plaintiffs' allegations must support an inference that Defendants acted deliberately and evasively with respect to the allegedly usurious agreement in particular.
>
> Plaintiffs have not contended that Defendants knew of the alleged valuation and schemed to underpay.

Mem. Op. & Order 12–13.

As before, Plaintiffs have supported their concealed usury claim only with the allegation that NPS knew the market value of Pearl's residuals and that such value, if considered interest, would be usurious. Am. Compl. ¶ 77. Taken as true, NPS's knowledge

---

[3] *See* Mem. Op. & Order 10 n.2:
> Characterizing the potential interest at issue as the residuals to be purchased versus the options to purchase them is a distinction without a difference. The intrinsic value of an option rises and falls with the value of the underlying asset. See Harold S. Bloomenthal & Samuel Wolff, 3 SEC. & FED. CORP. LAW, § 2:91 (2d ed. 2022).

MEMORANDUM OPINION & ORDER – PAGE 12

of the value of the assets securing its Loan does not, on its own, create a plausible inference that NPS acted maliciously to charge more interest than is lawful. It is Plaintiffs' "obligation to establish that there was a corrupt agreement or scheme to cover usury and that such agreement or scheme was in full contemplation of the parties." *Richards v. Moody*, 422 S.W.2d 200, 202 (Tex. Civ. App. — Houston [14th Dist.] 1967, writ ref'd n.r.e.). The Amended Complaint still does not carry that burden.

### CONCLUSION

Plaintiffs have not set forth a sufficient basis to reconsider the Court's ruling. Further, Plaintiffs have not alleged interest that can support a usury claim under Texas law, nor alleged facts sufficient for the Court to infer that the option agreements were deliberately used to conceal usury. Accordingly, the Court denies the motion for reconsideration and grants the motion to dismiss with prejudice.[4]

Signed July 5, 2023.

David C. Godbey
United States Chief District Judge

---

[4] The Court "may consider a variety of factors" when deciding whether to grant leave to amend, including "repeated failures to cure deficiencies by amendments previously allowed." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). Plaintiffs' Amended Complaint fails to address the issues identified by the Court in its previous Order granting dismissal, as do Plaintiffs' proposed amendments. Further, Plaintiffs have maintained the same legal positions in their motion for reconsideration and opposition to the motion to dismiss. The Court thus "concludes that Plaintiffs have pleaded their 'best case' and will not allow them an opportunity to further amend their pleadings." *Jones v. Deutsche Bk. Nat'l Tr. Co.*, 2014 WL 3375032, at *6 (N.D. Tex. 2014) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).