IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN PEARL GROUP, LLC, *et al.*, | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 3:22-CV-693-N |
| NATIONAL PAYMENT SYSTEMS, LLC, *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant National Payment Systems, LLC's ("NPS") motion for judgment on the pleadings [66]. Because Plaintiff American Pearl Group, LLC ("Pearl"), Andrei Wirth, and John Sarkissian (collectively "Plaintiffs") have pleaded sufficient facts to state a claim of relief for usurious interest charging under Texas law, the Court denies NPS's motion for judgment on the pleadings. Additionally, the Court denies Plaintiffs request for leave to amend their complaint [73].

## I. ORIGINS OF THE MOTION

The parties' relationship has been explained in detail previously, *see* Mem. Op. & Order 1–3 [23], and is briefly summarized here. NPS and Pearl operate in the credit card payment processing industry. Plaintiffs Andrei Wirth and John Sarkissian are both managers of Pearl. Whenever a consumer uses a credit card to pay a merchant for his or her purchase, information must flow between the issuing bank, which extends credit to the

cardholder, and the acquiring bank, which maintains the merchant's account. *Id*. NPS and Pearl are intermediaries that profit by facilitating transactions and retaining a portion of the money remitted. NPS is an Independent Sales Organization ("ISO"), which is a subtype of intermediary contracted by acquiring banks to sign up new merchants and service their accounts, and NPS subcontracted work to Pearl.

As part of the transaction, NPS leased equipment to Pearl. Pearl encountered financial difficulties paying NPS's invoices, which Pearl alleges was part of a concerted scheme by NPS to induce distress and obtain some of Pearl's streams of residual income. *Id*. To avoid insolvency, Pearl accepted loans from NPS (the "Loan") and its alleged affiliate BeckVentures, LLC ("Beck"), both of which were secured by Pearl's residuals portfolio and incorporated agreements granting NPS and Beck options to acquire future residual payment rights for a portion of the merchants in Pearl's portfolio. *Id*. The options locked in specific purchase prices and were not exercisable until the loans' full repayment or in the event of default. Plaintiffs initially sued NPS, Beck, and Does 1–20, seeking a declaration that the loans violate Texas's usury statutes and corresponding punitive damages.

This Court initially granted Defendant's motion to dismiss Pearl's usury claims. Mem. Op. & Order [23]. Regarding the option agreements, the Court concluded that (1) the values of the purchase options were too uncertain to constitute interest, and (2) Plaintiffs had not adequately alleged a scheme to conceal usury. *Id.* at 9–13. Under appellate review, the Fifth Circuit determined dismissal at the pleading stage was premature and suggested a closer evaluation of the evidence to determine whether the

purchase options constitute interest. *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, 2024 WL 4132409, at *9–11 (5th Cir. 2024). The Fifth Circuit reversed this Court's dismissal of Pearl's option usury claim, vacated that aspect of the judgment, and remanded for further proceedings consistent with the opinion. *Id*. at *11.

As to the NPS Loan's scheduled interest payments, this Court determined that Plaintiffs failed to allege interest that could support a usury claim under Texas law. Mem. Op. & Order 8–9 [23]. In its calculations, the Court applied the "spreading doctrine" using the "equal parts" method. *Id*.; *see* TEX. FIN. CODE § 306.004. At the time of this calculation, the Court was not aware of any Texas Supreme Court decision interpreting how "spreading" is used since the state legislature prescribed the actuarial method.

On appeal, the Fifth Circuit certified a question to the Supreme Court of Texas, asking the court to construe the statutory language of Section 306.004(a) of the Texas Finance Code. *Am. Pearl Grp.*, 2024 WL 4132409, at *3–9. Given the Texas Supreme Court's response, the Fifth Circuit reversed this Court's dismissal of Pearl's loan schedule usury claim, vacated the respective aspect of the judgment, and remanded for further proceedings consistent with the opinion. *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, 2025 WL 1938354, at *2–3 (5th Cir. 2025); *see Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, 715 S.W.3d 383, 389 (Tex. 2025).

Now, NPS moves for judgment on the pleadings on Plaintiffs' claims under Rule 12(c).

## II. RULE 12(C) LEGAL STANDARD

Federal Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard for dismissal on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court generally accepts well-pled facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

## III. THE COURT DENIES NPS'S RULE 12(C) MOTION

To survive a motion for judgment on the pleadings, Plaintiffs must plead that the parties contracted for some value satisfying the legal definition of usurious interest. Plaintiffs allege two types of interest supporting their usury claim — the Loan's scheduled interest and the incorporated purchase option agreement— as well as that NPS intentionally disguised that it was contracting for excessive interest.

### *A. Texas Law Governs the Claims*

The Fifth Circuit Court of Appeals expressly stated that "Texas law governs Pearl's usury claims." *Am. Pearl Grp., L.L.C. v. Nat'l Payment Sys., L.L.C.*, 2024 WL 4132409, at *1 (5th Cir. 2024). Additionally, the Fifth Circuit certified a dispositive question to the Supreme Court of Texas concerning the interpretation of Texas usury law. *Id.* at *7–8. Accordingly, the Fifth Circuit determined, both expressly and by necessary implication, that Texas law governs. Because this Court must follow a mandate issued by the appellate court, Plaintiffs' claims will be evaluated under Texas law. *See United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir. 2006) ("When on remand the district court assays to implement the mandate, it must proceed within the letter and spirit of the mandate by taking into account the appeals court's opinion and circumstances it embraces."); *Briggs v. Penn. R. Co.*, 334 U.S. 304, 306 (1948) ("[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court.").

***B. Plaintiffs Have Sufficiently Stated a Claim that the NPS Loan Charged Usurious Interest***

Considering the complaint in its entirety, Pearl has pled facts sufficient to state a plausible claim for usurious interest regarding the NPS Loan payment schedules.

***1. The Applicable Standard for Usury Claims Under Texas Law.*** – Under Texas usury law, lenders may not charge excessive interest on loans. Interest is any "compensation for the use, forbearance, or detention of money," barring exceptions not relevant here. TEX. FIN. CODE §§ 303.009(c), 301.002(a)(4). A usurious transaction has three elements: (1) a loan of money; (2) an absolute obligation for the borrower to repay the principal; and (3) an exaction of greater interest than allowed by law. *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W.2d 285, 287 (Tex. 1994) (citing *Holley v. Watts*, 629 S.W.2d 694, 969 (Tex. 1982)).

Whether a contract is usurious is determined as of its inception. *Southwestern Inv. Co. v. Hockley Cnty. Seed & Delinting, Inc.*, 511 S.W.2d 724, 731 (Tex. Civ. App. — Amarillo 1974), *rev'd on other grounds*, 516 S.W.2d 136 (Tex. 1974). Because usury statutes are penal in nature and thus construed strictly, courts initially presume that a transaction is lawful unless usurious on its face. *Pearcy Marine, Inc. v. Acadian Offshore Servs., Inc.*, 832 F. Supp. 192, 196 (S.D. Tex. 1993) (citing *Tex. Comm. Bank-Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex. 1984); *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 340–41 (Tex. 1980)). Facial usury exists where a contract makes "an express reservation of more than legal interest," and the intent to do so is apparent. *Luong v. Tran*, 1995 WL 613062, at *3 (Tex. App. — Houston [14th Dist.] 1995, pet. denied) (quoting

*Moser v. John F. Buckner & Sons*, 292 S.W.2d 668, 672 (Tex. Civ. App. — Waco 1956, writ ref'd n.r.e.)). Texas usury statutes establish that the maximum allowable interest rate for a commercial transaction such as this is 28% annually. TEX. FIN. CODE § 303.009(c).

***2. The Loan's Scheduled Interest Payments are Facially Usurious.*** – Under Texas law, courts test commercial contracts for usury by applying the spreading doctrine. *Id.* § 306.004(a). "[U]sury penalties cannot be imposed merely because a loan's interest rate exceeds the statutory limit in any particular year." *Pentico v. Mad-Wayler,Inc.*, 964 S.W.2d 708, 717 (Tex. App. — Corpus Christi-Edinburg 1998, pet. denied). Instead, Texas courts use an actuarial method and spread the total contracted interest across the life of the loan and assess it against the total maximum interest that would be allowed. *Am. Pearl Grp.*, 2024 WL 4132409, at *2. If the loan includes periodic principal payments during its term, then courts must base the interest calculation on the declining principal balance for each payment period. *Am. Pearl Grp.*, 715 S.W.3d at 385.

Using the calculation method articulated by the Fifth Circuit and Texas Supreme Court, the total amount of interest charged on the NPS Loan exceeds the statutory ceiling. *See Am. Pearl Grp.*, 2025 WL 1938354, at *2 ("[T]he total permissible amount of interest for the NPS Loan was $207,277.80, rather than the $367,598.83 determined by the district court, such that the total amount of interest charged—$309,865.91—yielded a legally excessive interest payment of $102,588.11.").[1] Accordingly, Pearl has adequately pled

[1] The NPS Loan proceeds were $375,100.85 to be repaid with $309,865.91 in interest over 42 months, or 3.5 years. For a more detailed explanation of the calculations, see Pls.' Br. Opp. Mot. Dismiss 15–16 [34].

sufficient facts to independently support a usury claim. For these reasons, the Court denies the motion for judgment on the pleadings as to Pearl's claim of usury against NPS for the loan payment schedule.

### *C. Whether the Purchase Option Constitutes Interest is a Question of Fact*

Whether the purchase option constitutes interest under Texas usury law is a fact question inappropriate for resolution on a motion for judgment on the pleadings. *Am. Pearl Grp.*, 2024 WL 4132409, at *10 ("[W]e are not convinced that dismissal at the pleadings stage was appropriate. Rather, we think a second, closer evaluation of the claim and relevant supporting evidence is warranted."); *First Bank*, 877 S.W.2d at 287 (noting that whether a monetary sum is interest is a question of fact for the jury "when there is any dispute in the evidence as to whether [the sum] is actually for an additional consideration . . . or is merely a device to conceal usury.").

Plaintiffs have set forth enough facts supporting this usury claim to raise the right of relief above a speculative level and survive a motion for judgment on the pleadings. *See Am. Pearl Grp*, 2024 WL 4132409, at *10 ("Although the *full* value of the purchase option was uncertain as of the inception of the Option Agreement, it is far from obvious that a sufficiently concrete value, . . . could not be established as of the time the Option Agreement was executed in 2019."). As such, a pretrial judgment is premature, and more time is needed "for discovery and the submission of relevant evidence." *Id.* Therefore, the Court denies the motion for judgment on the pleadings as to Pearl's claim of usury against NPS for the option agreement.

## CONCLUSION

For the reasons stated above, the Court denies NPS's motion for judgment on the pleadings. Additionally, because Texas law applies, the Court denies Plaintiffs leave to amend its complaint.

Signed September 2, 2026.

David C. Godbey
Senior United States District Judge